**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
SHAWN G. FRALEY,                )
                                )
                Petitioner,     )
                                )
        v.                      )       1:14CV947
                                )
FRANK L. PERRY,                 )
                                )
                Respondent.[1]  )
```

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus via 28 U.S.C. § 2254. (Docket Entry 3.)[2] For the reasons that follow, this Court should deny relief.

### I. BACKGROUND

A jury in the Superior Court of Forsyth County found Petitioner guilty of failure to register as a sex offender and achieving habitual felon status in cases 10CRS2867 and 11CRS6166, whereupon the trial court entered judgment sentencing him to 141 to 179 months in prison. (Id., ¶¶ 1, 3, 6; Docket Entry 3-4 at 67-69 (portion of transcript documenting failure to register verdict); Docket Entry 3-5 at 87-89 (portion of transcript documenting habitual felon verdict); Docket Entry 3-6 at 14 (portion of transcript documenting imposition of sentence); Docket Entry 8-2 at

---

[1] Petitioner originally named the State of North Carolina as Respondent, but, pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases, the Court ordered the substitution of the Secretary of the North Carolina Department of Public Safety, Mr. Perry. (See Docket Entry 5 at 1 n.1.)

[2] Along with the standard form for Section 2254 petitions, Petitioner submitted numerous documents from his underlying state criminal case. (See Docket Entries 3-1, 3-2, 3-3, 3-4, 3-5, 3-6, 4, 4-1, 4-2, and 4-3.) Respondent also attached to his summary judgment brief documents from Petitioner's underlying state criminal case. (See Docket Entries 8-2, 8-3.)

83-84 (verdict sheets), 89-90 (judgment).)  He pursued but failed to secure relief on direct appeal.  State v. Fraley, No. COA13-69, 749 S.E.2d 111 (table), 2013 WL 4007078 (N.C. Ct. App. Aug. 6, 2013) (unpublished), review denied, 748 S.E.2d 557 (N.C. 2013). The Superior Court thereafter denied Petitioner's Motion for Appropriate Relief ("MAR") and the North Carolina Court of Appeals declined review.  (Docket Entry 3, ¶¶ 10, 11; see also Docket Entry 4-2 at 23 (order denying certiorari petition as to MAR), 38 (order denying MAR).)[3]  He then instituted this action.  (Docket Entry 3.) Respondent has moved for summary judgment (Docket Entry 7) and Petitioner has responded (Docket Entry 10).

The North Carolina Court of Appeals summarized the circumstances of Petitioner's underlying state criminal case as follows:

> On 24 September 2009, [Petitioner] was released from incarceration after serving a sentence for an Indecent Liberties with a Child conviction.  Before he was released, [he] signed documentation acknowledging his duty to register as a sex offender no later than the third business day after being released from custody. According to the supervisor of the sex offender registry, [Petitioner] was to register by 29 September 2009.
>
> Between 26 September 2009 and 3 October 2009, [Petitioner] encountered several law enforcement officers and claimed that he lived at Wilkes Drive.  When the records custodian responsible for the sex offender registry in Forsyth County was notified, it appeared that [Petitioner] had failed to comply by registering as a sex offender.  [He] was arrested on 3 October 2009 and indicted for failure to register as a sex offender ("failure to register") on 30 November 2009 ("initial indictment").  On 8 March 2010, [Petitioner] was indicted for attaining the status of an habitual felon.  A

---

[3] Petitioner also apparently unsuccessfully sought review of his MAR by the North Carolina Supreme Court.  See State v. Fraley, 763 S.E.2d 395 (N.C. 2014).

-2-

superseding indictment charging [him] with attaining the status of an habitual felon was issued on 29 November 2010 ("habitual felon indictment"). On all the indictments, the date of the offense was listed as 29 September 2009.

In March 2011, [Petitioner] was tried in Forsyth County Superior Court for failure to register as a sex offender. Upon conclusion of the State's evidence, [he] moved to dismiss on the grounds that there was a fatal variance in the initial indictment for [his] failure to register. [He] argued that the date was an essential element of the offense and that he was not guilty for failing to register on 29 September 2009. The trial court denied the State's motion to amend the initial indictment to change the dates of the offense and granted [Petitioner's] motion to dismiss.

On 18 April 2011, [Petitioner] was indicted under a new indictment for failure to register ("second indictment"). On the second indictment, the date of the offense was corrected to begin on 30 September 2009 through 3 October 2009. [Petitioner] filed a motion to dismiss the second indictment on the grounds that a trial under the second indictment would violate his right to be free from double jeopardy. The trial court denied his motion to dismiss. [He] subsequently renewed his motion to dismiss based on double jeopardy and the trial court denied this motion as well.

In May 2012, after a second trial for failing to register as a sex offender, the jury returned a verdict finding [Petitioner] guilty of failing to register as a sex offender. The jury also found [him] guilty of attaining the status of an habitual felon.

Fraley, 2013 WL 4007078, at *1-2 (internal footnote omitted).

## II.  PETITIONER'S CLAIMS

The Petition identifies three grounds for relief. (Docket Entry 3, ¶ 12.) Ground One, entitled "Double Jeopardy 5th Amendment U.S. Constitution," identifies the following "[s]upporting facts": "I went to trial twice. After my case was dismissed in my first trial 09CRS060866, the State of North Carolina reindicted me again for the same thing and tried me again. I was tried and punished

twice.  The State of North Carolina left the habitual felon indictment pending after the charge was dismissed in trial 09CRS060866."  (Id., ¶ 12(Ground One)(a).)

Ground Two of the Petition, which bears the title "Equal Protection of the laws 14 Amendment U.S. Constitution," relies on these "[s]upporting facts":  "When the State of North Carolina dismissed my charge in trial 09CRS060866 the habitual felon 10CRS002876 was suppose [sic] to be dismissed as well.  I did not have a pending charge."  (Id., ¶ 12(Ground Two)(a).)  Finally, beneath the title "Ineffective Assistance of Counsel 6th Amendment U.S. Constitution," the Petition's Ground Three describes the "[s]upporting facts" as follows:  "When I got the charge dismissed at trial 09CRS060866 my attorney [] was suppose [sic] to get the habitual felon dismissed as well 10CRS002876.  My attorney was suppose [sic] to assist me.  I did not receive effective assistance of counsel.  I did not have a pending charge for the habitual felon to attach to."  (Id., ¶ 12(Ground Three)(a).)

### III.  HABEAS STANDARDS

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Further, "[b]efore [the] [C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  In other words, the state prisoner must give the state courts an opportunity to act on his claims before he

presents those claims to [this] [C]ourt in a habeas petition. The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see also 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement.").[4]

When a petitioner has exhausted state remedies, this Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confront[] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[] at a result opposite" to the United States Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of United States Supreme Court case

---

[4] The Court may deny a claim on the merits despite a lack of exhaustion. See 28 U.S.C. § 2254(b)(2).

law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409-11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous"). Finally, this Court must presume state court findings of fact correct unless clear and convincing evidence rebuts them. 28 U.S.C. § 2254(e)(1).

## IV. DISCUSSION

### A. Ground One: Double Jeopardy

Ground One of the Petition seeks federal habeas relief based on the contention that Petitioner's underlying state conviction(s) for failing to register as a sex offender and achieving habitual felon status violated his federal guarantee against double jeopardy[5] because a prior trial on such charges ended when the trial court granted his motion to dismiss. (See Docket Entry 3, ¶ 12(Ground One)(a).) Petitioner raised this same claim on direct appeal and the North Carolina Court of Appeals rejected it thusly:

> [Petitioner] argues that the trial court erred by denying his motion to dismiss because he claims he was tried twice for the same offense that was dismissed at a previous trial. According to [Petitioner], the State violated the double jeopardy provisions of the state and federal constitutions. We disagree.
>
> . . . The doctrine of double jeopardy "provides that no person shall be subject for the same offence to be twice

---

[5] "Under the Double Jeopardy Clause of the Fifth Amendment, no 'person shall be subject for the same offence to be twice put in jeopardy of life or limb.' U.S. Const. amend. V. The double jeopardy prohibition - 'a fundamental ideal in our constitutional heritage' - applies 'to the States through the Fourteenth Amendment.' Benton v. Maryland, 395 U.S. 784, 794 (1969)." Baum v. Rushton, 572 F.3d 198, 206 (4th Cir. 2009) (internal brackets and parallel citations omitted).

-6-

put in jeopardy of life or limb." State v. Sparks, 182 N.C. App. 45, 47, 641 S.E.2d 339, 341 (2007) (citation and quotations omitted). "[T]he Double Jeopardy Clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." State v. Rahaman, 202 N.C. App. 36, 40, 688 S.E.2d 58, 62 (2010) (citations and quotations omitted). "[W]hen the trial court grants a defendant's motion to dismiss at the close of evidence, that ruling has the same effect as a verdict of not guilty." Id. at 43, 688 S.E.2d at 64; see N.C. Gen. Stat. § 15-173 (2011). "However, the 5th Amendment right to be free from double jeopardy only attaches in a situation where the motion to dismiss is granted due to insufficiency of the evidence to support each element of the crime charged." Rahaman, 202 N.C. App. at 44, 688 S.E.2d at 64. Double jeopardy does not preclude a retrial when a charge is dismissed because there was a fatal variance between the proof and the allegations in the charge. Id.; see also State v. Johnson, 9 N.C. App. 253, 175 S.E.2d 711 (1970).

In the instant case, [Petitioner] was released on 24 September 2009. According to the statute, [he] had three business days to comply and the deadline for him to register was 30 September. See N.C. Gen. Stat. § 14-208.7(a)(1) (2011). The initial indictment charged [Petitioner] with failing to register on 29 September. The trial court granted [Petitioner's] motion to dismiss the initial indictment. Subsequently, the State issued the second indictment charging [him] with failure to register as a sex offender and corrected the dates to begin on 30 September through 3 October 2009.

[Petitioner's] reliance on N.C. Gen. Stat. § 15-173 is misplaced. Here, the trial court granted [Petitioner's] motion to dismiss the initial indictment due to a fatal variance between the initial indictment and the proof at trial, not due to insufficiency of the evidence. The State was permitted to retry [Petitioner] because the second indictment, charging him for failing to register, corrected the dates of the offense. As a result, the trial court did not violate [Petitioner's] double jeopardy provisions of the state and federal constitutions and did not err by denying [his] motion to dismiss.

[Petitioner] also argues that failure to register is a continuing offense and therefore, he can only be charged once. However, [his] initial indictment for failure to

-7-

> register was dismissed. Double jeopardy does not preclude a retrial when a charge is dismissed because there was a fatal variance between the proof and the allegations in the charge. Therefore, there was no original offense to "continue." Rather, after the initial indictment was dismissed, the State issued the second indictment charging [Petitioner] with failure to register from 30 September to 3 October. Unlike [Petitioner's] claim, the State did not attempt to "divide a single act . . . into as many counts . . . as the prosecutor could devise." State v. White, 127 N.C. App. 565, 570, 492 S.E.2d 48, 51 (1997). Therefore, [Petitioner's] argument has no merit.

Fraley, 2013 WL 4007078, at *2-3.

"[B]ecause this matter comes before [this Court] pursuant to [a] § 2254 petition for habeas corpus relief, [the instant] review focuses on the propriety of the [above-quoted] [s]tate [d]ecision . . . ." Baum v. Rushton, 572 F.3d 198, 209 (4th Cir. 2009). More specifically, this Court "may award [Petitioner] relief only if [that] [s]tate [d]ecision . . . can be found deficient under the highly deferential standards . . . contained in § 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses, as well as in § 2254(d)(2)'s 'unreasonable determination of the facts' provision." Id.; see also Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398 (2011) (observing that Section 2254(d) imposes "a difficult to meet and highly deferential standard . . ., which demands that state-court decisions be given the benefit of the doubt . . . [and that a] petitioner carries the burden of proof" (internal citations and quotation marks omitted)); Baum, 572 F.3d at 209 ("We emphasize 'that it is Supreme Court precedent, and not Fourth Circuit precedent, to which we look in applying [Section

2254(d)(1)'s] standard of review.'" (quoting Bustos v. White, 521 F.3d 321, 325 (4th Cir. 2008))).

Petitioner has not made the showing required by Section 2254(d).  First, he has not identified any unreasonable fact-finding (made or relied upon) by the North Carolina Court of Appeals as to the double jeopardy issue.  (See Docket Entry 3, ¶ 12(Ground One)(a); Docket Entry 10 at 4-6.)  Second, Petitioner has not established that the North Carolina Court of Appeals contradicted or unreasonably applied any United States Supreme Court interpretation of the Double Jeopardy Clause.  (See id.)[6]

Nor could he meet that burden, given the litany of decisions by the United States Supreme Court supporting the North Carolina Court of Appeals's ruling on point.  See, e.g., Evans v. Michigan, ___ U.S. ___, ___, 133 S. Ct. 1069, 1074-75 (2013) ("[T]he Double Jeopardy Clause bars retrial following a court-decreed acquittal

---

[6] In support of Ground One, Petitioner's summary judgment response quotes a United States Supreme Court decision for the proposition that "'the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial,' Arizona v. Washington, 434 U.S. 497, 503 [sic] (1978)" (Docket Entry 10 at 4 (parallel citation omitted)); that quotation, however, omitted a material qualification embedded in the original text (which actually appears at page 505, not page 503, of volume 434 of the United States Reports):  "as a general rule." Moreover, the cited decision goes on to make clear that, "[u]nlike the situation in which the trial has ended in an acquittal or conviction, retrial is not automatically barred when a criminal proceeding is terminated without finally resolving the merits of the charges against the accused."  Id. at 505 (emphasis added); see also United States v. Scott, 437 U.S. 82, 100 (1978) ("[W]here the defendant . . . obtains the termination of the proceedings against him in the trial court without any finding by a court or jury as to his guilt . . . [h]e has not been 'deprived' of his valued right to go to the first jury; only the public has been deprived of its valued right to 'one complete opportunity to convict those who have violated its laws.'" (quoting Washington, 434 U.S. at 509)). Finally, in the cited case, the United States Supreme Court ultimately allowed a second trial (even though, unlike here, the defendant there had opposed, not solicited, a pre-verdict termination of the first trial).  See Washington, 434 U.S. at 503, 516-17.  Accordingly, the North Carolina Court of Appeals did not run afoul of Washington when it denied Petitioner's double jeopardy claim.

. . . . [O]ur cases have defined an acquittal to encompass any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense. . . . These sorts of substantive rulings stand apart from procedural rulings that may also terminate a case midtrial, which we generally refer to as dismissals or mistrials. Procedural dismissals include rulings on questions that are unrelated to factual guilt . . . <u>like an error with the indictment</u>. Both procedural dismissals and substantive rulings result in an early end to trial, but . . . the double jeopardy consequences of each differ. The law attaches particular significance to an acquittal, so a merits-related ruling concludes proceedings absolutely. This is because to permit a second trial after an acquittal . . . would present an unacceptably high risk that the Government . . . might wear down the defendant so that even though innocent he may be found guilty. And retrial following an acquittal would upset a defendant's expectation of repose . . . . In contrast, a termination of the proceedings against a defendant on a basis unrelated to factual guilt . . ., i.e., some procedural ground, does not pose the same concerns . . . ." (internal brackets, citations, and quotation marks omitted) (emphasis added)); <u>Lee v. United States</u>, 432 U.S. 23, 25-34 (1977) ("[T]he Government charged [the defendant] with the crime of theft . . . . Although the defect did not come to light before trial, the allegations of the information were incomplete. . . . After the prosecutor's opening statement, [the defendant's] lawyer moved to dismiss the information . . . [and] called the court's attention

to the lack of any allegation of knowledge or intent in the information. . . . After the Government had presented its case [and] . . . [t]he defense [had] rested without presenting any evidence, [] the court . . . grant[ed] the motion to dismiss because of the failure of the information to charge either knowledge or intent . . . . [Subsequently, the defendant] again was charged with the theft, this time in an indictment alleging all of the elements of the [offense]. On substantially the same evidence as had been presented at the first trial, he was convicted. On appeal, the Court of Appeals for the Seventh Circuit affirmed, rejecting [the defendant's] claim that the second trial was barred by the Double Jeopardy Clause. We granted certiorari to consider the double jeopardy issue. . . . [T]he proceedings were terminated [during the first trial] at the defendant's request and with his consent. . . . It follows . . . that there was no double jeopardy barrier to [his] retrial unless the judicial or prosecutorial error that prompted [his] motion was intended to provoke the motion or was otherwise motivated by bad faith or undertaken to harass or prejudice [him]. . . . The drafting error was at most an act of negligence, as prejudicial to the Government as to the defendant. . . . <u>We hold that [the defendant's] retrial after dismissal of the defective information at his request did not violate the Double Jeopardy Clause</u>." (internal citations and quotation marks omitted) (emphasis added)).

The Court therefore should enter judgment against Petitioner on Ground One, pursuant to Section 2254(d).

-11-

**B. Ground Two: Equal Protection**

In Ground Two, the Petition asserts that an equal protection violation occurred because Petitioner's habitual felon indictment remained pending after the dismissal of his first failure to register indictment. (See Docket Entry 3, ¶ 12(Ground Two)(a).) "The Equal Protection Clause of the Fourteenth Amendment provides that 'no State shall deny to any person within its jurisdiction the equal protection of the laws.'" Morrison v. Garraghty, 239 F.3d 648, 653 (4th Cir. 2001) (quoting U.S. Const. amend. XIV, § 1) (internal brackets and ellipses omitted). "To succeed on an equal protection claim, [Petitioner] must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Id. at 654; see also id. ("Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. Ordinarily, a state regulation or policy . . . will be sustained if the classification is rationally related to a legitimate state interest. . . . [C]lassifications which are based upon [such] factors [as race or national origin], or which impinge upon fundamental rights protected by the Constitution, are subjected to stricter scrutiny, sustained only if they are narrowly tailored to serve a compelling state interest." (internal citations omitted)).

Petitioner has not alleged that other habitual felon-defendants in North Carolina who had their related, predicate

felony charges dismissed due to indictment defects received different treatment than he did; nor has Petitioner alleged that any differential treatment stemmed from an intent to discriminate against him (much less that racial or other suspect-classification-based bias fueled any discrimination in his case). (See Docket Entry 3, ¶ 12(Ground Two)(a); Docket Entry 10 at 6-9.) Instead, Petitioner simply has contended that, due to certain procedural requirements of North Carolina law, "[b]ecause the state did not reindict [him] with the habitual felon [charge] when the state reindicted [him] with the [failure to register] charge [] the trial court lacked jurisdiction to sentence [him] as a habitual felon." (Docket Entry 10 at 9; see also id. at 7 (citing state cases).)

"It is black letter law that a federal court may grant habeas relief 'only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.' Because [Petitioner's instant] claim, when pared down to its core, rests solely upon an interpretation of [state] case law and statutes, it is simply not cognizable on federal habeas review." Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998) (quoting 28 U.S.C. § 2254(a)) (internal brackets and citations omitted); see also Ashby v. Payne, 317 F. App'x 641, 643 (9th Cir. 2008) ("[The petitioner] has failed to state a cognizable equal protection claim . . . because his allegations are conclusory and he has not provided sufficient facts to support them."); Newbold v. Secretary, Fla. Dep't of Corr., No. 4:12CV307-WS, 2015 WL 3794934, at *4 (N.D. Fla. June 17, 2015) (unpublished) ("[B]ecause [the]

[p]etitioner has done nothing more that couch a garden variety state law [] claim as a federal claim by intoning federal constitutional law provisions - with no mention of facts or argument to suggest that there are federal constitutional claims - [he] has failed to present a cognizable habeas claim."); Owens v. Birkett, No. 2:07CV14930, 2007 WL 4327814, at *2 (E.D. Mich. Dec. 7, 2007) (unpublished) ("[The] [p]etitioner's conclusory reference to an equal protection violation, even construed liberally, does not state a claim for a constitutional deprivation cognizable in a federal habeas corpus proceeding.").[7]

Under these circumstances, the Court should deny relief on Ground Two.

### C. Ground Three: Ineffective Assistance of Counsel

According to the Petition's Ground Three, Petitioner's counsel provided constitutionally ineffective assistance because he failed to have Petitioner's habitual felon charge dismissed along with the first failure to register charge. (See Docket Entry 3, ¶ 12(Ground Three)(a)). When assessing Ground Three, the Court must note that:

> In order to establish an ineffective assistance of counsel claim . . ., [a petitioner must] establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," [Strickland v. Washington, 466 U.S. 668, 688 (1984)], and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "Unless a [petitioner] makes

---

[7] Moreover, Petitioner raised this same state-law-based jurisdictional claim on direct appeal and the North Carolina Court of Appeals rejected it. See Fraley, 2013 WL 4007078, at *3-4. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

-14-

> both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.
>
> In determining whether counsel's performance was deficient, "[i]t is all too tempting for a [petitioner] to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks omitted).
>
> Similarly, in evaluating whether [a petitioner] has shown actual prejudice from any such deficient performance, it is insufficient for the [petitioner] "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." Id. at 693. Rather, a "reasonable probability" that the result would have been different requires "a probability sufficient to undermine confidence in the outcome." Id. at 694. When challenging a conviction, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

Fisher v. Lee, 215 F.3d 438, 446-47 (4th Cir. 2000) (internal parallel citations omitted); see also Harrington v. Richter, ___ U.S. ___, ___, 131 S. Ct. 770, 788 (2011) ("Surmounting Strickland's high bar is never an easy task. . . . Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." (internal quotation marks omitted)).[8]

---

[8] As Respondent has observed, "Petitioner first raised his ineffective assistance of counsel claim in an amendment to his MAR." (Docket Entry 8 at 14; see also Docket Entry 4-2 at 46-49 (Motion to Amend MAR).) Respondent further argues that, because the Superior Court "summarily and alternatively denied the MAR on the merits," this Court should apply "the highly deferential standards of review contained in [S]ection 2254(d) and (e)." (Id. at 14-15.) That order by
(continued...)

-15-

Petitioner has not made (and, indeed, cannot make) the requisite showing under Strickland. Petitioner's ineffective assistance of counsel claim assumes that North Carolina law entitled him to dismissal of his habitual felon charge upon dismissal of his first failure to register charge, but the North Carolina Court of Appeals rejected that assumption in connection with Petitioner's direct appeal, see Fraley, 2013 WL 4007078, at *3 ("[Petitioner] argues that the trial court lacked jurisdiction to sentence him as an habitual felon because the habitual felon indictment was ancillary to the substantive charge and should have been dismissed at the time the initial indictment for failure to register was dismissed. We disagree."), as Petitioner has conceded (see Docket Entry 10 at 12 ("The [North Carolina Court of Appeals] judges made errors in my opinion. . . . The habitual felon indictment stood alone after [my first failure to register indictment was dismissed] which is against the law.")). Even if the North Carolina Court of Appeals misconstrued North Carolina law on this point, "[i]t is beyond the mandate of federal habeas courts, [] to correct the interpretation by state courts of a state's own laws." Sharpe v. Bell, 593 F.3d 372, 383 (4th Cir. 2010).

In the words of another court faced with an analogous situation:

---

⁸(...continued)
the Superior Court, however, makes no reference to Petitioner's proffered amendment of his MAR, but instead refers only to the original MAR and its double jeopardy and jurisdictional claims. (See Docket Entry 4-2 at 38.) As a result, the Court should review Ground Three de novo (i.e., by applying Strickland directly, rather than through the additional prism of Section 2254(d)).

-16-

> The [state appellate court] already has told us how the
> issues would have been resolved under [] state law had
> [Petitioner's counsel] done what [Petitioner] argues [his
> counsel] should have done — objected to the [continued
> pendency of the habitual felon charge]. It is a
> fundamental principle that state courts are the final
> arbiters of state law, and federal habeas courts should
> not second-guess them on such matters. Accordingly, with
> regard to this claim, [Petitioner] cannot establish
> either deficient performance by [his counsel] or
> prejudice.

Herring v. Secretary, Dep't of Corr., 397 F.3d 1338, 1354-55 (11th Cir. 2005) (internal citations and quotation marks omitted).

In sum, Ground Three lacks merit.

### V. CONCLUSION

Petitioner's habeas claims all fail as a matter of law.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 7) be granted and that judgment be entered dismissing this action without issuance of a certificate of appealability.

                                            /s/ L. Patrick Auld
                                              **L. Patrick Auld**
                              **United States Magistrate Judge**

August 6, 2015